## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Kennarda Bugg, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:20cv349 (AJT/TCB)** |
| | ) | |
| Dr. M. Burrell, D.D.S., et al., | ) | |
|     Defendants. | ) | |

### MEMORANDUM OPINION

Kennarda Bugg ("Bugg" or "plaintiff"), a Virginia inmate proceeding pro se, filed a civil-rights suit under 42 U.S.C. § 1983, claiming that he had received constitutionally inadequate dental care, in violation of his Eighth Amendment rights, while confined at the Lunenburg Correctional Center. [Dkt. No. 1]. By Order dated June 5, 2020, the Court allowed this matter to proceed with respect to Bugg's Eighth Amendment claim against defendants Dr. M. Burrell ("Dr. Burrell") and Dr. Stephen Brown ("Dr. Brown"); dismissed Bugg's equal protection claim brought under the Fourteenth Amendment because Bugg had not alleged any discrimination; and dismissed all claims against defendant J. Draper, because Bugg had not alleged that Draper had committed any individual conduct that violated plaintiff's constitutional rights. [Dkt. No. 4]. Both Dr. Brown and Dr. Burrell have filed separate motions to dismiss, with supporting briefs. [Dkt. Nos. 15-18]. Bugg has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Accordingly, this matter is now ripe for disposition. For the reasons that follow, each defendant's Motion to Dismiss shall be granted, and the complaint will be dismissed.

## I. Background

Bugg is an inmate at the Virginia Department of Corrections' Lunenburg Correctional Center ("LCC"). He alleges that on November 27, 2018, he was transported off-site by prison staff to Dr. Brown's office to have a tooth extracted. Bugg's complaint stems from an alleged injury that resulted from an IV Dr. Brown administered during his oral surgery. Bugg alleges that the day after Dr. Brown performed the oral surgery, November 28, 2018, the place on his arm where the IV had been inserted had "knotted up and felt hard to the touch." [Dkt. No. 1 at 3]. Over the next two weeks, Bugg alleges the knot grew bigger and became painful.

On December 17, 2018, Bugg contacted LCC's medical department. He was seen by a nurse on December 21, 2018. The nurse relayed his/her observations to a physician, who prescribed aspirin (once daily through March 30, 2019) without examining Bugg. [Dkt. No. 1-1 at 1-2]. On January 9, 2019, Dr. Burrell saw Bugg and prescribed Tylenol. He then referred Bugg back to Dr. Brown to evaluate the knot on Bugg's arm because Dr. Brown had performed the oral surgery from which the injury originated. [Id. at 4; Dkt. No. 1-1 at 4]. Bugg filed an informal complaint regarding his arm on January 22, 2019, because Bugg noticed that the vein "was starting to get hard all the way up his arm" and asked to see another doctor. [Dkt. No. 1-1 at 4]. The response to the complaint explained to Bugg that he had been referred to Dr. Brown because Dr. Brown had administered the IV.

On February 5, 2019, Dr. Brown examined Bugg's arm and diagnosed the knot as "negative for phlebitis." Dr. Brown prescribed heating pads to apply to the affected area and advised Bugg to elevate the affected arm. [Dkt. No. 1 at 3]. Dr. Brown's consulting physician's report to the LCC medical staff stated "'no pain pills,' but, prescribed aspirin 325 mgs." [Dkt. No. 1-1 at 6]. Over two months later, on April 10, 2019, Bugg was seen by a doctor at LCC and

2

has Bugg transported on April 17, 2019 to Southampton Memorial Hospital to have the knot evaluated. The hospital's radiology report found "acute ... thrombus [blood clot] in the left cephalic vein at the elbow level correlating with the knot." [Id. at 11].

On April 22, 2019, an LCC doctor had Bugg transported to the Virginia Commonwealth University Health Emergency Department ("VCUHED") for an ultrasound "due to his medical condition increasing due to the left arm clot." [Dkt. No. 1 at 3]. The test found Bugg had "Phlebitis, inflammation of the vein." [Id.]. The report from VCUHED indicated that Bugg was examined for a blood clot on his left arm and noted it was "Not life threatening." [Dkt. No. 1-1 at 17]. Bugg was diagnosed with phlebitis, a swelling or soreness of the vein, and prescribed aspirin (once daily for 180 days). [Id. at 15, 20, 24].

Thereafter, throughout the remainder of 2019 and into 2020, Bugg filed requests, grievances and complaints seeking to see doctors about the pain associated with his blood clot. The doctors prescribed aspirin, Tylenol, and Naproxen. [Id. at 25, 28, 29, 32-33, 34, 35, 39, 42].[1]

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va.

---

[1] Defendant Dr. Brown filed a reply [Dkt. No. 21] to Bugg's opposition to the motion to dismiss [Dkt. No. 19] stating Bugg was attempting to add additional facts to his complaint in Bugg's opposition. Thereafter, Bugg filed a reply stating that he was not seeking to rely on new facts [Dkt. No. 22] but stated he had only cited those facts to show that his condition deteriorated after he was treated by the defendants. The attachment to the complaint contains information about the treatment of Bugg's condition, including his allegations of numbness and a worsening condition, through 2020. This situation has no bearing on the Court's resolution of the present motions.

1998).  Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard.  Id.

Where a complaint is filed by a prisoner acting pro se, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded.  Haines v. Kerner, 404 U.S. 519, (1972).  A pro se litigant is therefore not held to the strict pleading requirements demanded of attorneys.  Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979).  For these reasons, a court's "power to summarily dismiss a prisoner's pro se complaint is limited." Figgins, 584 F.2d at 1347.

### III. Analysis

Bugg alleges that Dr. Brown intentionally tried to cover-up his "possible wrongful act," "misdiagnosed" Bugg's medical condition and "intentionally and knowingly [wrote] a notation not to prescribe pain pills as treatment and made an unprofessional judgement call in a medical field he was not legally certified to practice in to which subjected [Plaintiff] pain and suffering[.]" [Dkt. No. 1 at 4].  Bugg further alleges that Dr. Brown's actions "deprived him of

4

necessary and adequate medical treatment for his said medical conditions" which amounted to deliberate indifference "to his serious medical needs" in violation of the Eighth Amendment to the U.S. Constitution. [Id. at 5]. Bugg's complaint against Dr. Burrell asserts that Dr. Burrell knew Bugg "could not be evaluated by the Dental Department because [the blood clot] was not a dental issue" and that Dr. Burrell therefore "knowingly and intentionally, denied" Bugg medical treatment by a doctor "trained in the areas of Thrombus/Phlebitis conditions to which caused him to suffer from severe pain and irreparable damages." [Id. at 4]. At best, Bugg has alleged negligence or malpractice and neither equates to deliberate indifference of a serious medical need.

To state an Eighth Amendment claim for denial of medical care, plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle, 429 U.S. at 105; Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). A serious medical need is one that poses a substantial risk of serious injury to an inmate's health and safety. Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001). Second, he must allege deliberate indifference to that serious medical need.

Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v.

5

Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). The treatment an inmate receives from a health care provider constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. A defendant must act with either actual intent or reckless disregard, meaning that the defendant disregarded "a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52.

### A. Dr. Burrell

The factual record does not support plaintiff's argument that Dr. Burrell knowingly, intentionally, or recklessly disregarded or denied plaintiff's medical needs. Plaintiff's oral surgery was performed on November 27, 2018. Although Bugg noticed the knot the next day, he did not complain about the knot on his arm until December 17, 2018. Dr. Burrell had made the referral for oral surgery to Dr. Brown, but Dr. Brown was not involved in the oral surgery itself. Bugg was seen by LCC medical staff on December 21, 2018 and prescribed aspirin.

Dr. Burrell saw Bugg on January 9, 2018 and referred him back to Dr. Brown. Bugg had already been prescribed aspirin and Dr. Burrell additionally prescribed Tylenol to address Bugg's pain. In short, Dr. Burrell did not ignore or deny Bugg medical treatment — Dr. Burrell provided him with medical treatment (aspirin and non-narcotic pain medication), which was the same course of treatment administered by the subsequent doctors that treated Bugg's blood clot. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (holding that "questions of medical

6

judgment are not subject to judicial review" under § 1983). Bugg does not allege Dr. Burrell had any further involvement in the treatment of the blood clot after January 9, 2019 and the complaint and the attachments establish that other medical personnel monitored Bugg's knot. Here, assuming arguendo that plaintiff's blood clot is sufficiently serious to warrant constitutional protection, plaintiff's own allegations and exhibits make it clear that Dr. Burrell was not deliberately indifferent to Bugg's medical need.

Plaintiff's disagreement with the medical treatment he received from Dr. Burrell does not make out a cause of action. Wright, 766 F.2d at 849. As it is apparent that Dr. Burrell was not deliberately indifferent to plaintiff's medical needs "by either actual intent or reckless disregard," Estelle, 429 U.S. at 106, plaintiff fails to state a claim of constitutional dimension against Dr. Burrell and the claim accordingly will be dismissed.

### B. Dr. Brown

After Dr. Brown performed the oral surgery on November 27, 2018, he did not see Bugg again until February 5, 2019. In between, Bugg was treated by LCC medical personnel and was seen and then referred to Dr. Brown by Dr. Burrell on January 9, 2019. Dr. Brown was not on-site at the LCC medical unit but operated a civilian practice in Chesterfield, Virginia. [Dkt. Nos. 1 at 2, 3; 1-1 at 6]. On February 5, 2019, Bugg had been prescribed aspirin by other medical providers and given Tylenol for pain. Dr. Brown did not prescribe any additional pain medication and instead advised Bugg to use a heating pad and to keep his arm elevated. Bugg does not allege Dr. Brown had any further involvement in the treatment of his blood clot.

Bugg, however, was seen by an LCC doctor on April 10, 2019 and referred to Southampton Memorial Hospital on April 17, 2019 where the subsequent radiology report

indicated Bugg had a blood clot.  The LCC doctor then referred Bugg to VCUEHD for an

ultrasound which was performed on April 22, 2019 and that test also confirmed a blood clot.

Bugg started receiving treatment for the knot on his arm on December 21, 2018, four

days after he reported it, and that treatment continued into 2020.  During the course of that

treatment, the different medical providers Bugg saw regarding his blood clot each prescribed

neither discontinued the aspirin that had been prescribed on December 21, 2018 nor the non-

narcotic pain medications that had been prescribed beginning on January 9, 2019.  Where a

doctor "orders treatment consistent with the symptoms presented and then continues to monitor

the patient's condition, an inference of deliberate indifference is unwarranted under our case

law." Self v. Crum, 439 F.3d 1227, 1232-33 (10th Cir. 2006).  In sum, Dr. Brown was but one

of a series of doctors that monitored Bugg's blood clot and prescribed essentially the same

treatment as the subsequent doctors who examined Bugg, doctors who had the benefit of the

radiology and ultrasound reports administered in April 2019.  See Archer v. Simmons, 128 F.

App'x 716, 719 (10th Cir. 2005) (affirming Rule 12(b)(6) dismissal where a blood clot that

formed after treatment "was treated as soon as it was discovered," and finding plaintiff's

"allegations of unreasonable medical treatment amount to a claim of negligence at most, not

deliberate indifference" and "[his] dissatisfaction with the treatment provided does not state a

cognizable constitutional claim under the Eighth Amendment."); see also Hood v. Prisoner

Health Servs., Inc., 180 F. App'x 21, 25 (10th Cir. 2006) (failure to diagnose blood clot resulting

from state prisoner's vascular condition and delay in providing prescribed medication and

treatment could not constitute a constitutional violation because "inadvertent or negligent failure

to provide medical care, however serious the consequences, does not rise to 'deliberate

indifference to serious medical needs' and is not a constitutional violation.") (citations omitted).

To the extent Bugg hinges his claim on Dr. Brown's diagnosis of the knot on February 5, 2019 as "negative for phlebitis," as a misdiagnosis, Bugg fails to state a constitutional claim. A misdiagnosis is not actionable under § 1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

> Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48, (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Thomasson v. Tapper, No. 4:11-0686-DCN-TER, 2012 U.S. Dist. LEXIS 22174, *23 (D.S.C. Jan. 26, 2012), adopted by 2012 U.S. Dist. LEXIS 22125 (D.S.C. Feb. 22, 2012).

Bugg's complaint also fails to establish a causal link between Dr. Brown's actions and plaintiff's injury. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (in addition to alleging a defendant's deliberate indifference to his medical needs, plaintiff must also prove causation between that indifference and his injuries); Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts ... require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability). While contractual medical providers such as Dr. Brown can be held liable under § 1983, Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (holding that "a physician who treats a prisoner acts under color of state law even though there was no contractual relationship between the prison and the physician"), Dr. Brown was not on-site at LCC and as such had no control over Bugg's post-operative care. Wright v. Genovese, 694 F. Supp. 2d 137, 156 (N.D.N.Y. 2010) (holding that a surgeon "cannot be liable under Section 1983 for not getting

9

involved ... in plaintiff's post-operative care" where he "had no control over if and when [the prison] would refer a[n] inmate to him for a follow-up examination after the inmate had been returned to the care of the prison medical staff").

As several documents attached to the complaint establish, a referral by LCC medical was required in order for Bugg to be seen by off-site medical provider such as Dr. Brown. To be sure, however, LCC medical personnel saw Bugg on numerous times after February 5, 2019 and the LCC medical personnel also referred plaintiff for evaluation by doctors outside LCC. Bugg has not challenged the care provided by the doctors who saw Bugg after February 5, 2019. Beginning in April 2019, the doctors who treated Bugg's blood clot had the added benefit of the radiology and ultrasound reports, but those doctors left Bugg's treatment regimen essentially unchanged. With the exception of the addition of Naproxen, the doctors that treated Bugg after February 5, 2019 left the orders for aspirin and Tylenol that the prior medical personnel, including Dr. Brown, had either prescribed or left unchanged in place.

While one can sympathize with Bugg over the pain and discomfort that befell him after his oral surgery, he was treated and monitored for his blood clot from his first appointment on December 21, 2018 through the filing of his complaint in 2020. Even if he was not properly diagnosed prior to the tests performed in April 2019, that does not state a cognizable constitutional claim under the Eighth Amendment.

### IV. Conclusion

For the reasons outlined above, defendants' motions to dismiss [Dkt. Nos. 15 and 17] will be granted through an Order that will issue alongside this Memorandum Opinion.

Entered this 9ᵗʰ day of Oct. 2020.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

10